**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
-------------------------------------------------------X
STEVEN MINNICK, individually,
JHANNA WHITE, individually,
and on behalf of all others similarly situated,

Civil Docket No.:  21-489

Plaintiffs,

-against-

**CLASS ACTION**
**COMPLAINT**

ROBINHOOD FINANCIAL LLC,
ROBINHOOD SECURITIES, LLC,
ROBINHOOD MARKETS, INC.,

Defendants.          **Plaintiff Demands a**
**Trial by Jury**

-------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs STEVEN MINNICK, individually, and JHANNA WHITE, individually,

(hereinafter referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated,

brings this action against Defendant ROBINHOOD FINANCIAL LLC, ROBINHOOD

SECURITIES, LLC, and ROBINHOOD MARKETS, INC., (hereinafter referred to as

"Defendants" or "Robinhood") and alleges as follows:

## PARTIES

1. At all times material, Plaintiff STEVEN MINNICK was and is a citizen of the

   Commonwealth of Pennsylvania.

2. At all times material, Plaintiff JHANNA WHITE was and is a citizen of the

   Commonwealth of Pennsylvania.

3. Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets, Inc. Robinhood Financial LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

4. Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Defendant Robinhood Financial LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

5. Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

6. The above-named corporate defendants herein referred to collectively as "Robinhood."

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class and subclass(es) are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Many members of the proposed class are citizens of a state different from Defendant.

8. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood, distributed, marketed, advertised, and sold the trading services which are the subject of the present complaint. Finally, venue is appropriate in this District pursuant to 28 USC § 1391(b)(2) because a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

9. This Court has personal jurisdiction over Robinhood because it is authorized to do business and does conduct business in Pennsylvania, and because it has specifically marketed, advertised, and made substantial sales in Pennsylvania, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## **FACTUAL ALLEGATIONS**

10. Robinhood is an online brokerage firm. Its customers place securities trades through the firm's website, by using a web-based application (or "app"). Robinhood permits customers to purchase and sell securities, including futures contracts.

11. Robinhood's advertising campaigns were aggressively marketed toward "outside" investors:

    -   "We are all investors!" Robinhood's advertisement declared, promising the ability to break through the *status quo* of Wall-Street-Suites.

- Robinhood urged its customers to participate in investing in the stock market: "Robinhood believes *now* is the time to do money… so you can start investing today!" one commercial states.

- Robinhood promised its customers a "way to financial freedom." ("*Investing in financial assets was the way to financial freedom*.").

- "A new kind of investor is changing things up!" another ad declared.

- One commercial introduced viewer to an artist named Brandon who used the commissions from his paintings to purchase stocks. Brandon tells the audience that Robinhood has given him his "*financial power back*" and triumphantly declares "*you are in control of your financial destiny*."

12. Upon information and belief, Robinhood's advertisements ran online throughout this jurisdiction on websites like YouTube, Instagram, and Twitter on-and-off for the last three years.

13. Robinhood's advertisements consistently advertise a trading platform that was a viable alternative to commission-based competitors, thereby tearing down the walls of seclusion and letting the *outsider* in.

14. Robinhood's advertisement consistently and continuously advertised services that were the same or similar to their competitors.

15. Robinhood's advertisements consistently and continuously, both impliedly and directly, advertised a service in which customers could buy some of the most popular stocks in the world.

16. Robinhood's advertisements consistently and continuously, both impliedly and directly, advertised a service that was on-par, consistent with, and similar to their competitors.

17. Robinhood has experienced significant growth as a relatively new online brokerage firm. In 2019, Robinhood raised $323 million in funding at a $7.6 billion valuation.

18. The firm claims over 10 million users of its trading app.

19. On or about March 23, 2016, Robinhood's official Twitter account stated: "*Let the people trade.*" They have since disregarded their mantra completely.

20. About a year ago, retailer investors began discussing online investing in the company GameStop Corp. ("GME").

21. In public, online forum boards, online retail investors began circulating thesis on why GME might increase in value:

    "…*it's obviously not guaranteed to work out, but it's a reasonable component of the thesis that must be taken into consideration. To quote Sherman: "The industry of gaming is red-hot. The specific issue is the need for GameStop to pivot." GameStop would be in a unique position if they could leverage their position as the sole B&M retailer focused almost exclusively on gaming*."[1]

22. The GME stock quickly increased in popularity and, therefore, Robinhood's customers began to buy and hold GME stock.

23. On or around January 11, 2021, the price of GameStop Corp. ("GME") stock began to rise significantly.

24. Other stocks began to rise, too, including stocks with the ticker symbols: AMC, BB, BBBY, EXPR, KOSS, NAKD and NOK, among others.[2]

---

[1] *See* https://www.reddit.com/r/wallstreetbets/comments/d31bke/gme_yolo_update_following_the_q2_earnings_report/ [Last Accessed January 30, 2021]

[2] These listed securities, as well as all other securities Robinhood forbid its customers from buying on January 28, 2021, are hereby referred to as the "Blocked Securities."

25. These stocks became popular to buy among Robinhood's customers and popular across all trading platforms, including all of Robinhood's competitors who offer similar, if not identical, services.

26. In early January, 2021, Robinhood allowed their customers to buy GME on the open market as well as the other, eventually, Blocked Securities.

27. At that time, in or around early and mid-January of 2021, Robinhood made no indication to their customers that they would be removing GME, AMC, BB, BBBY, or any other Blocked Securities that, around the same time, were some of the most frequently traded stocks in the world.

28. In or around early and mid-January, GME and some of the Blocked Securities were the most popular stocks in the world, rivaling the purchases of stocks in Apple, Facebook, and Tesla.

29. On or about January 28, 2021, abruptly and with no forewarning, Robinhood, in order to slow the growth of GME and other stocks, and deprive their customers of the ability to use their service, abruptly, purposefully, willfully, and knowingly pulled GME and other Blocked Securities from their app. Meaning, Robinhood's customers could no longer buy or even, in some cases, search for GME and other Blocked Securities on Robinhood's app.

30. Robinhood gave no reasonable prior warning before forbidding its customers from buying what, at that time, were some of the most popular stock in the world.

31. Robinhood failed to give any indication to their customers that they would arbitrarily forbid purchasing some of the most popular stocks in the world.

32. On January 28, 2021, Robinhood made a discretionary decision to forbid its customers from purchasing GME and other Blocked Securities.

33. Robinhood's discretionary decision to halt buys of the Blocked Securities was a breach of their fiduciary duties to their customers and, the decision to halt buys was made in bad-faith.

34. Robinhood's discretionary decision and breach of their fiduciary duty impacted customers who had already purchased GME and other Blocked Securities. For instance, on January 28, 2021, as a direct result of Robinhood's actions, the price of GME dropped from $486 to $153.00 a share.

35. At all times material, Robinhood knew or should have known their unwarranted, discretionary decision to halt purchases of GME and the Blocked Securities would materially impact their customers' investment positions.

36. Implicit in every offer for service Robinhood had ever made, was that customers would be able to trade the world's most popular stocks, and be able to purchase the world's most popular stocks, especially during unprecedented gains—such as with GME, AMC, and other Blocked Securities.

37. Despite advertising its ability to allow users to buy popular stocks, Robinhood failed to deliver on their promises. This failure was for no legitimate reason.

38. Upon information and belief, Robinhood's actions were done purposefully and knowingly to manipulate the market for the benefit of people and financial intuitions who were not Robinhood's customers.[3]

---

[3] "All roads in last week's saga seemed to go through Citadel. The market maker, Citadel Securities, is one of the biggest sources of Robinhood's revenue, as it pays the no-fee trading app for handling its orders and fills more of them than any other firm. Meanwhile, [Citadel] invested $2 billion in Melvin Capital, which lost 53% in January after being bloodied by a short squeeze on shares including GameStop. Citadel's hedge funds lost less than 1% from

39. Robinhood clients, prior to January 28, 2021, were not alerted about any potential conflicts of interested Robinhood may have.

40. No reasonable customer would anticipate Robinhood to, abruptly and without warning, forbid them from purchasing one of the world's most popular stocks that was on a historic rise.

41. No customers were warned of such unfair and deceptive practices by Robinhood.

42. Because of Robinhood's failure to warn, customers did not have the opportunity to transfer money from their Robinhood accounts to another brokerage account. Thus, customers lost out of the days opportunity to purchase GME and Blocked Securities.

43. On or about January 27, 2021, other major trading platforms, such as E*Trade, continued to allow their customers to purchase GME and the Blocked Securities that Robinhood had removed.

44. Thus, Robinhood's abrupt removal of the world's most popular stocks did not conform with industry standards and was completely unexpected.

45. Robinhood's abrupt removal of some of the world's most popular stocks was at odds with every advertising campaign Robinhood had ever ran.

46. Robinhood has completely blocked their customers from purchasing GME and the Blocked Securities for no legitimate reason, thereby depriving retailer investors from the benefits of Robinhood's services.

---

its investment in Melvin, and overall dropped 3% during the month."
[https://www.bloomberg.com/news/articles/2021-01-31/the-citadel-link-what-ken-griffin-has-to-do-with-gamestop]
[Last Accessed February 2, 2021].

47. The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Robinhood "*must make every effort to execute a marketable customer order that it receives promptly and fully*." By failing to respond at all to customers' placing timely trades—and outright blocking customers from trading a security—Robinhood has breached these, among other, obligations and caused its customers substantial losses due solely to its own negligence and failure to maintain adequate infrastructure. In fact, Robinhood made little effort to execute a marketable trade on GME and other Blocked Securities, instead they forbid the purchases of these securities unnecessarily.

48. Upon information and belief, Robinhood pulled securities like GME and the Blocked Securities from its platform in order to slow growth and help benefit individuals and institutions who are *not* Robinhood customers but are Robinhood large institutional investors or potential investors.

49. Or, alternatively, Robinhood has solicited customers for a service they cannot provide in an adequate manner or up to industry standards and, these shortcomings, have harmed their customers.

50. Or, alternatively, Robinhood was negligent in how they ran their business. Robinhood knew they had a duty of care with respect to their clients, but completely disregarded that duty by making the discretionary decision to forbid buys on GME and the Blocked Securities.

51. On January 29, 2021, after massive political and social backlash, the very next day, *somehow* Robinhood managed to reinstate customer purchases of the previously forbidden stocks.

52. Since Robinhood's negligence, breach of fiduciary obligations, failure to warn their clients, failure to operate within industry standards, and other bad acts, Robinhood's CEO has done numerous interviews. All interviews are a slightly different, or very different, variation on Robinhood's reason *why* they blocked certain securities from being purchased.

***Plaintiffs' Experience***

53. On the morning on January 28, 2021, Plaintiffs used their Robinhood app, searched for GME and the Blocked Securities on Robinhood's app, and found them unavailable.

54. The stock did not even appear, although GME and the other Blocked Securities are publicly traded company available, at the time, on all other platforms.

55. Thus, Plaintiffs, like so many others, lost out on all earning opportunities because of Robinhood's negligence, breach of fiduciary duties, failure to act in good faith, and complete failure to warn or disclose relevant information.

56. Eventually finding GME and other Blocked Securities on Robinhood's app, Plaintiffs found they were unable to purchase with cash in their accounts GME and the other Blocked Securities.

57. Additionally, Plaintiffs found the value of stocks they did own in the Blocked Securities, plummeted, costing them, both individual and collectively, thousands to millions of dollars.

58. Plaintiffs, like so many others, reasonably believed Robinhood would allow them to purchase the world's most popular stocks when those stocks were doing well.

59. Plaintiffs never knew, nor was warned, Robinhood would restrict purchases of GME and the Blocked Securities.

60. Plaintiffs never knew, nor was warned, that Robinhood's had many conflicts of interest due to outside investors and other potential investors.

61. Plaintiffs reasonably believed Robinhood operated similar to any other trading platform competitor, as advertised.

## <u>CLASS ACITON ALLEGATIONS</u>

62. Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, as defined below:

**All Robinhood customers within the United States.**

63. Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass, as defined below:

**All Robinhood customers within the United States who were not able to execute trades on GME and the Blocked Securities after Robinhood knowingly, willfully, and purposefully removed them completely and/or restricted them from their platform; all customers within the United States who were harmed by Robinhood's knowingly, willfully, and purposeful removal of GME and the Blocked Securities.**

64. Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass, as defined below:

**All Robinhood customers within Pennsylvania State.**

65. Additionally, or in the alternative, Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass, as defined below:

**All Robinhood customers within Pennsylvania who were not able to execute trades on GME and the Blocked Securities after Robinhood knowingly, willfully, and purposefully removed them completely and/or restricted them from their platform; all customers within Pennsylvania State who were harmed by Robinhood's knowingly, willfully, and purposeful removal of GME and the Blocked Securities.**

66. Excluded from the Class are the Robinhood entities and their current employees, counsel for either party, as well as the Court and its personnel presiding over this action.

67. This action has been brought and may properly be maintained as a class action against Robinhood pursuant to the provisions of Federal Rule of Civil Procedure 23.

68. **Numerosity:** The precise number of members of the proposed Class is unknown to Plaintiff at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, Class members number in the hundreds of thousands and up to ten million. Subclass members are likely in the thousands. All Class and Subclass members may be notified of the pendency of this action by reference to Robinhood's records, or by other alternative means.

69. **Commonality**: Numerous questions of law or fact are common to the claims of Plaintiff and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to the following:

a.  Whether Robinhood knowingly failed to provide the financial services that were needed to handle reasonable consumer demand, including buy securities that were available on every other competitive trading platform;

b.  Whether Robinhood failed to provide the duty of care to their customers when they purposefully removed GME and the Blocked Securities;

c.  Whether Robinhood removed GME and the Blocked Securities purposefully to harm their customers' positions in GME and benefit their own potential financial gains;

d.  Whether Robinhood has conflicts of interested that were adverse to their customer and/or that were not disclosed to their customers;

e.  Whether Robinhood violated FINRA Rule 5310, among other FINRA rules, state rules, and federal regulations;

f.  Whether Robinhood violated consumer protection laws in failing to disclose that its services would not include the ability to trade on GME and the Blocked Securities, and other securities, for substantial periods of time;

g.  Whether Robinhood was in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services;

h.  Whether Robinhood was in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services;

i.  Whether Robinhood was negligent or grossly negligent by failing to provide promised financial services in a timely manner due to its own possible nefarious desires;

j.  Whether Robinhood was negligent or grossly negligent in its operations by failing to provide promised financial services;

k.  Whether Robinhood deceptively, unfairly, purposefully or negligence, mislead consumers into believing Robinhood could provide the advertised financial services similar to their competitors;

l.  Whether Robinhood breached its fiduciary duties to customers by failing to provide adequate access to financial services;

m.  Whether Robinhood was unjustly enriched by its conduct;

n.  Whether Plaintiff and the other Class members were injured by Robinhood's conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief; and

o.  Whether Plaintiff and the other Class members are entitled to injunctive and declaratory relief.

70. **Typicality:** The claims of the named Plaintiff are typical of the claims of the proposed Class in that the named Plaintiff was a customer during the class period and was unable to trade GME and place time-sensitive trades on GME and sustained damages as a result of Robinhood's wrongful conduct.

71. **Adequate Representation:** Plaintiff will fairly and adequately represent the interests of the Class in that he has no conflicts with any other Class members. Plaintiff has retained competent counsel experienced in prosecuting complex class actions, including those involving financial services, and they will vigorously litigate this class action.

72. **Predominance and Superiority**: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or

varying adjudications, establishing incompatible standards of conduct for the Defendant. Additionally, given the relatively modest damages sustained by most individual Class members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Robinhood's wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

73. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants. 34. Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

74. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Robinhood has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole. 36. Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair

and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiff is insufficient to make litigation addressing Robinhood's conduct economically feasible for most in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

75. Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class wide basis.

## CAUSE OF ACTION I
## For Breach of Contract

76. Plaintiffs hereby incorporate by reference the factual allegations set forth above.

77. In order to use the Robinhood trading platform, a potential customer must enter into the Customer Agreement with Robinhood.

78. Plaintiffs and all class members did enter into a Customer Agreement with Robinhood.

79. Robinhood breached its Customer Agreement by, among other things, failing to disclose that its platform was going to randomly pull a profitable stock from its platform; that Robinhood failed to provide adequate explanation to their customers; that Robinhood knowingly put their customers at a disadvantage compared to customers who used other trading apps; that Robinhood failed to provide access to or notice about its own financial incentives to pull certain securities including GME and the Blocked Securities; that

Robinhood's prohibited plaintiffs from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers, among other things.

80. As such, Robinhood breached its Customer Agreement with Plaintiff and Class members.

81. Robinhood's failure to perform and its breaches of the Customer Agreement resulted in damages and losses to Plaintiffs and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement. These losses reflect damages to Plaintiffs and Class members in an amount to be determined at trial or separate proceedings as necessary.

## CAUSE OF ACTION II
### Breach of the Implied Covenant of Good Faith and Fair Dealing

82. Plaintiffs hereby incorporate by reference the factual allegations set forth above.

83. Plaintiffs and members of the Class and Subclass entered into the Customer Agreement with Defendant Robinhood to open a Robinhood trading account. They agreed to Robinhood's Terms and Conditions by using Robinhood's website and trading platform.

84. Plaintiffs and members of the Class and Subclass fulfilled their obligations under these contracts by adhering to their terms and using Robinhood's trading services through its website and trading platform.

85. Robinhood was obligated to provide certain trading services required under those contracts at all times, including but not limited to, trades for GME and the Blocked Securities.

86. When initially signing up for Robinhood, Plaintiff and all those similarly situated could and most actually did trade GME and the Blocked Securities.

87. When initially signing up for Robinhood, Robinhood had never forbidden costumers from trading one of the most popular and frequently traded stocks in the world (including stocks in Apple, Microsoft, and Tesla).

88. Within the online brokerage firm industry, no other platforms ever forbid the purchasing of (i) one of the world's most frequently traded stocks; (ii) when the price of that stock is generally ascending.

89. Robinhood took actions that were inconsistent with industry standards and inconsistent with what a reasonable customer would expect.

90. Robinhood unfairly interfered with the rights of Plaintiffs and members of the Class and Subclass to receive the benefits of the Customer Agreement by, among other things, (i) failing to provide services necessary to carry out a trade; (ii) failing to provide certain trading services whatsoever; (iii) failing to inform individuals in a timely member of the drastic changes in trading abilities; (iv) prohibiting plaintiffs from buying GME and the Blocked Securities for Robinhood's own pecuniary interest and not disclosing those interest to Plaintiffs and all Class and Subclass members; (v) not providing services up to industry standards; (vi) failing to maintain the ability, technology, support, liquidity, knowledge, or resources to provide customers what had been promised, offered, and/or expected, among other things.

91. Robinhood has no legitimate reason for its conduct and could only be seen to have acted in bad-faith.

92. Robinhood's conduct has caused Plaintiffs and members of the Class and Subclass harm, losses, and damages. These losses reflect damages to Plaintiffs and members of the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

## CAUSE OF ACTION III
### Negligence

93. Plaintiffs hereby incorporate by reference the factual allegations set forth above. Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

94. Robinhood had a duty to exercise reasonable care in providing trades on the free, open market for its customers to the best of their abilities and to standards of other, similar services within their industry.

95. Robinhood's conduct as set forth in this Complaint was want of even scant care, and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct, particularly in light of their competitors' actions and industry standards. Their actions breach any duty of care to their customers, but are also inconsistent with the standard of care expected from similar firms in the open market.

96. Upon information and belief, no institutions similar to Robinhood has ever outright banned customers from purchasing one of the most popular stocks in the world while the price was ascending.

97. Robinhood essentially abandoned its customers altogether by pulling GME and other of the world's most popular stocks, a standard of care so far below what is required for a business engaging in time sensitive trading services that it amounts to a complete abandonment of its duties.

98. Robinhood took these actions knowing that many customers could not pull their money out of their app, transfer their money to or open another online trading account, and make the necessary purchases in time to secure prices of certain securities.

99. Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiffs and members of the Class and Subclass proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to Plaintiffs and members of the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

**CAUSE OF ACTION IV**
**Breach of Fiduciary Duty**

100. Plaintiff hereby incorporates by reference the factual allegations contained herein.

101. As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiffs and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf. Robinhood also acted as a fiduciary to each and every customer who agreed to the Customer Agreement.

102. Robinhood breached its fiduciary duties to Plaintiffs and Class members by, among other things, failing to disclose that its platform was going to remove GME and the Blocked Securities purchases in a timely manner; actually removing GME and Blocked Securities from being purchased; removing GME and Blocked Securities for its own pecuniary benefits or prospective pecuniary benefits; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310); Robinhood failed to disclose any direct or indirect conflict of interest; taking the above actions when these decisions were within Robinhood's discretion, and thus actively, knowingly, and purposefully harming their customers.

103. Robinhood's conduct has caused Plaintiffs and Class members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its fiduciary duties. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial or separate proceedings as necessary.

**CAUSE OF ACTION V**
**FOR VIOLATION OF THE PENNSYLVANIA**
**UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

104. Plaintiffs hereby incorporates by reference the factual allegations set forth above.

105. Robinhood has engaged in unfair competition within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201.1 *et seq.* ("UTPCPL"), because Robinhood's conduct is unfair and fraudulent as herein alleged.

106. Plaintiffs, the members of the Class, and Robinhood are a "person" or "persons" within the meaning of Section 201.2 of the UTPCPL.

107. The UTPCPL Section 201.3 prohibits any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Robinhood's conduct, as alleged herein, constitutes an unfair and deceptive business practice that occurred in connection with the marketing advertisement, and sale of its services.

108. Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact and suppression of otherwise available securities, as described herein, violated the UTPCPL's unfair and deceptive prongs.

109. Robinhood's conduct, as described herein, violates the UTPCPL's unfair and deceptive prongs because it advertised goods or services with intent not to sell them as advertised, and also because it engaged in otherwise fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

110. Plaintiffs would not have used Robinhood's services and/or placed trades and made financial transactions through those services had he known the truth and Robinhood's plan to forbid the trading of certain securities, though they may have an interest in continuing to use the service in the future should Robinhood cure the problems set forth in this

Complaint.

111. Likewise, Plaintiffs would not have used Robinhood's services had they know Robinhood was incapable of providing services meeting industry standards.

112. As a direct result of Robinhood's actions and omissions of material facts, Plaintiff and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that they otherwise would not have made, and lost their ability to make informed and reasoned purchasing decisions.

113. As a direct and proximate cause of Robinhood's conduct, which constitutes  unfair and deceptive business practices, as herein alleged, Plaintiff and Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## CAUSE OF ACTION VI
## FOR VIOLATION OF THE PENNSYLVANIA
## SECURITIES ACT OF 1972

114. Plaintiff hereby incorporates by reference the factual allegations set forth above.

115. Robinhood has engaged in acts, practices, and/or courses of business which operate or would operate as a fraud or deceit upon any person within the meaning of the Pennsylvania Securities Act of 1972, 70 P.S. §§ 101.1 *et seq.* ("PSA").

116. The PSA provides that it is unlawful for any person, in connection with the offer, sale or purchase of any security in Pennsylvania, directly or indirectly: "[t]o employ any device, scheme or artifice to defraud, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, and [t]o engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person."

117. The PSA Section 1-501(a) further provides that "any person who…offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the purchaser not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person purchasing the security from him…"

118. Plaintiffs, the members of the Class, and Robinhood are a "person" or "persons" within the meaning of Section 1-102(n) of the PSA.

119. Robinhood's conduct, as described herein, constitutes acts, practices, and/or courses of business that deceived Plaintiff and the Class, omitted material information, and employed a scheme to defraud Plaintiff and the Class in violation of Section 1-401.

120. Plaintiffs would not have used Robinhood's services and/or placed trades and made financial transactions through those services had they known the truth and Robinhood's plan to forbid the trading of certain securities, though they has an interest in continuing to use the service in the future should Robinhood cure the problems set forth in this Complaint.

121. Likewise, Plaintiffs would not have used Robinhood's services had they know Robinhood was incapable of providing services meeting industry standards.

122. As a direct result of Robinhood's actions and omissions of material facts, Plaintiff and Class members were unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that they otherwise would not have made, and lost their ability to make informed and reasoned purchasing decisions.

123. As a direct and proximate cause of Robinhood's conduct, which constitutes unfair and deceptive business practices, as herein alleged, Plaintiff and Class members have been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## **JURY TRIAL**

Plaintiff demands a jury trial.

Date: February 2, 2021

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC**

Nathaniel N. Peckham, Esq.
Samuel C. Wilson, Esq.
1835 Market St Suite 2950,
Philadelphia, PA 19103

Alexander G. Cabeceiras, Esq.
(*Pro Hac Application Forthcoming*)
One Penn Plaza, Suite 4905
New York, New York 10119

*Attorneys for Plaintiffs*